# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00334-CV

**Ezell Green and Ida Mae Green, Appellants**

**v.**

**Gemini Exploration Company and Robert Edsel, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. 96-12740, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This dispute concerns an oil and gas lease between appellants Ezell and Ida Mae Green and appellees Gemini Exploration Company and Robert M. Edsel, the president and owner of Gemini. After the lease expired, the Greens brought suit against Gemini, the leaseholder, and Edsel for not drilling a well or pooling their property. The Greens alleged fraud, discrimination, and breach of various implied covenants. Pursuant to motions for partial summary judgment filed by appellees, all except one of the Greens= claims were dismissed. A take-nothing jury verdict was rendered against the Greens on the sole remaining claim. In ten issues, the Greens appeal the adverse judgment of the district court. We will affirm in all respects.

## BACKGROUND

The Greens own a sixty-acre tract of land in Lee County, in the Giddings (Austin Chalk 3) Field. In the early 1990s, Gemini approached the Greens to offer terms for an oil and gas lease. The Greens rejected Gemini=s initial offer, and further negotiations failed. However, Gemini successfully leased nearby tracts of land, created two units, and commenced drilling two wells: the Keng and Islet units. Production from the Keng well did not cover the costs of completion, drilling, and operation. The Islet well performed better but did not produce a profit. The Greens eventually approached Gemini through its agent, Mike Gaffney, about leasing their property. Gemini initially declined, but sometime in 1992 Gemini reconsidered and signed a three-year lease with the Greens on October 30, 1992.[1] This lease was a standard three-year, primary-term lease that was Apaid up,@ thus providing for an upfront payment to the Greens of $6000. Gemini never drilled a well on the Greens= property and never pooled it with any other acreage. Gemini unsuccessfully attempted to persuade Union Pacific Resources Company (AUPRC@) to include the Greens= lease in a unit UPRC formed nearby. The lease expired at the end of October 1995.

The Greens filed suit in Travis County on October 21, 1996, against Gemini and Edsel for breach of the duties to protect the lease from drainage, to reasonably develop the lease, to administer and manage the lease, and to seek favorable administrative action, for fraud, and for illegal discrimination. Edsel filed a motion for partial summary judgment in July 1997 (AEdsel=s motion@), seeking dismissal from the

---

[1] At that time, the Keng well had been drilled and completed, and the Islet well had been drilled and was within one day of completion.

case. The Greens responded to his motion and at the same time moved for an extension of time to supplement their response on the basis that they were unable to depose Edsel because he was out of the country. The district court granted Edsel=s motion without discussion, stating only that Athere is no genuine issue as to a material fact regarding Edsel=s personal liability.@

In September 1999, Gemini filed a motion for partial summary judgment on both traditional and no-evidence grounds (Asecond motion for partial summary judgment@), to which the Greens responded. In its order, the court outlined the procedural history of the case and without discussion granted summary judgment on four issues: claims of fraud, illegal discrimination, breach of implied covenant to reasonably develop the lease, and breach of duty of good faith and fair dealing. The court refused to dismiss the Greens= claims of breach of implied covenant to protect from drainage and breach of implied covenant to reasonably administer the lease. In January 2001, Gemini filed another motion for partial summary judgment (Athird motion for partial summary judgment@) to dismiss the Greens= two remaining causes of action. The Greens filed a cross motion for partial summary judgment and argued that the district court was precluded from reconsidering whether to dismiss the Greens= remaining causes of action because it had not dismissed them in the second partial summary judgment order. The Greens later filed a response to Gemini=s motion and, in support of their cross motion, submitted the expert opinion affidavit of James Smith, a petroleum engineer and former field operations director for the Texas Railroad Commission. After hearing arguments, the court dismissed the Greens= claim of breach of implied covenant to reasonably administer the lease. It also denied all of the Greens= motions.

On January 28, 2002, trial commenced on the Greens=claim against Gemini for its alleged breach of implied covenant to protect from drainage. At trial, the Greens offered Smith=s expert testimony. The district court allowed Smith to testify as to whether there was substantial drainage from the Greens= land, whether a protection well could have been drilled on the Greens=property, and whether Gemini would have had a reasonable expectation of profit had it done so. However, the court did not allow Smith to testify as to whether Gemini should have released the Greens= lease, about any possible compensatory royalties or about any possibility of pooling the Greens=lease with either the Keng or Islet units. The Greens also offered the testimony of Don Williams, an oil and gas operator, who had considered leasing the Greens= land. The district court limited Williams=s testimony to his decision not to lease the property and would not permit him to testify about the issue of drainage because the Greens had not certified him as an expert during discovery.

In its defense, Gemini offered the testimony of three expert witnesses: Edsel, who testified as to oil and gas production in the Giddings (Austin Chalk 3) Field; Duane Wagner, a petroleum geologist who testified to drainage in the Giddings (Austin Chalk 3) Field upon review of Amud logs@[2] of the Keng and Iselt units; and Don Carver, an oil and gas operator in the Giddings (Austin Chalk 3) Field and a petroleum engineer, who testified about the mechanics of drilling horizontal wells like those in the Keng and Islet units

---

[2] AMud logs@refer to the records an on-site geologist or petroleum engineer keeps at an oil and gas well. They include information about drilling rate, fluorescence of samples, fractures, gas, flares, and pressure readings. An expert reviewing Amud logs@can draw conclusions about the presence and quantities of oil and gas in a well as well as rates of flow and drainage.

and about drainage resulting from those wells. The district court denied the Greens= motions to exclude Gemini=s witnesses and denied their requests to conduct a voir dire of those witnesses.

The district court submitted the factual questions to the jury on February 1, and the jury rendered a verdict in favor of Gemini. The Greens filed a motion for a new trial based on allegations of jury misconduct due to outside influence on the jury deliberations. Their motion was overruled by operation of law. This appeal followed.

## DISCUSSION

On appeal, the Greens= first four issues challenge the district court=s partial summary judgments. In their fifth, sixth, and seventh issues, the Greens challenge evidentiary rulings by the district court concerning both their expert witnesses and those offered by Gemini. In their eighth and ninth issues, the Greens make various complaints about the jury charge. In their tenth issue, the Greens argue that the district court should have reversed the jury verdict because of improper outside influences brought into the jury room. We will first address the summary judgment issues and will then discuss the trial issues.

### *Standards for Reviewing Summary Judgments*

The standards for reviewing traditional summary judgments are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex.

5

R. Civ. P. 166 (a)(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). The summary judgment is affirmable on appeal if any ground asserted in the motion for summary judgment is a valid ground for rendering summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). **Thus, a party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166(a)(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 233 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)**.

A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant=s claim on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Thus, Aa no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict.@ *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no pet.) (citing *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied)). The task of the appellate court is to determine whether the plaintiff has produced any evidence of probative force to raise fact issues on the material questions presented. The appellate court must consider all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, every reasonable

inference must be indulged in favor of the nonmovant, and any doubts resolved in its favor. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303-04 (Tex. 1988).

### *The Second Partial Summary Judgment*

We will begin with the Greens= third and fourth issues, whereby they urge us to reverse the district court=s grant of the second motion for partial summary judgment.

In their third issue, the Greens contend that the district court erred in dismissing their cause of action Abased on the breach of the duty of good faith and fair dealing which was implied from the lease agreement.@ Specifically, the Greens complain of Gemini=s **failure to pool their property with other surrounding properties.** The supreme court has expressly rejected the inclusion of a general implied covenant of good faith and fair dealing in Texas contracts. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). Although such a duty may exist in a fiduciary relationship, the court has not enumerated a duty of good faith and fair dealing when examining the duties implied in oil and gas leases. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567 (Tex. 1983). To **the contrary, Texas courts have specifically held that unless the lease document itself creates in law a trust, or unless a relationship of trust and confidence necessarily results from the lessor-lessee relationship, the standard of conduct of the lessee cannot be appropriately categorized as fiduciary and thus cannot give rise to a duty of good faith and fair dealing.** *See Manges v. Guerra*, 673 S.W.2d 180, 183-84 (Tex. 1984)*; Hurd Enters. Ltd. v. Bruni*, 828 S.W.2d 101, 108 (Tex. App.CSan Antonio 1992, writ denied). Because the Greens have presented no evidence to suggest the existence of a fiduciary relationship between themselves and Gemini**, we agree with Gemini that, as a matter of law, it owed no general**

duty of good faith and fair dealing to the Greens as a result of the parties= oil and gas lease. Applying the appropriate standard of review for a traditional summary judgment, we conclude that no fact issue exists. *Cates*, 927 S.W.2d at 626; *Nixon*, 690 S.W.2d at 548-49. **Thus, we uphold the district court=s grant of summary judgment and overrule the Greens= third issue.**

The Greens contend in their fourth issue that the district court erred in dismissing their cause of action for fraud because they believe that Gemini made false representations of material fact in obtaining the lease from them. To establish **fraud, there must be a showing that: (1) a false material representation was made; (2) at the time the representation was made, the speaker either knew the representation was false or recklessly made it as a positive assertion despite having no knowledge of the truth; (3) the speaker intended that the other party would rely on the representation; and (5) the other party relied on the representation and suffered harm as a result.** *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, **962 S.W.2d 507, 524 (Tex. 1998). A promise to perform an act in the future amounts to fraud if the promise is made with the intention to deceive the other party and with no intention of performing the promised act.** *Spoljaric v. Percival Tours, Inc.*, **708 S.W.2d 432, 434 (Tex. 1986). Because each of the elements of fraud are necessary to sustain a cause of action, if Gemini can sustain a claim for Ano evidence@ summary judgment on any of the elements, we will uphold the district court=s judgment.** *See Johnson & Higgins*, **962 S.W.2d at 524.**

At the time of the district court=s order, the only evidence in the record regarding fraud consisted of testimony concerning the Greens= conversation with Gaffney in which Gaffney

8

allegedly stated that Gemini would either drill on their property or pool them with the Islet well. This conversation occurred three weeks after they signed the lease. The record shows that before signing the lease, the Greens discussed only the price terms with Gemini. They do not allege fraud on the basis that Gemini made false representations about the price of the lease. Additionally, the Greens testified by deposition that no promises or representations were made to them about drilling or pooling before or while they signed the lease. Thus, we agree with Gemini that no evidence was produced that the Greens relied upon a false statement by Gemini when agreeing to sign the lease. A conversation that occurs three weeks after a lease is signed simply cannot sustain the Greens= claim that Gemini made false representations to induce the Greens to agree to the lease. We therefore uphold the district court=s partial summary judgment dismissing the claim of fraud and overrule the Greens= fourth issue.

*The First Partial Summary Judgment*

In their first issue, the Greens argue that the district court erred in dismissing Edsel because the district court failed to grant their motion for extension of time to supplement response and because fact issues had been raised as to whether Edsel=s role in Gemini allowed them to pierce the corporate veil. The Greens present their complaint about the district court=s failure to grant them an extension as a prelude to their argument that issues of fact had been raised to maintain an individual claim against Edsel. But the Greens provide no legal authority for reviewing the district court=s denial of their motion for extension of

9

time.[3]  Bare assertions of error, without citations to authority, waive error.  Tex. R. App. P. 38.1(h); *Trenholm v. Radcliff*, 646 S.W.2d 924, 937 (Tex. 1983); *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 409 (Tex. App.CHouston [14th Dist.] 2001, pet. filed); *see also Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (**appellate court has discretion to waive issues due to inadequate briefing**).  To the extent that the Greens assert this complaint as an issue, it has been waived.  We will thus review the record as it stands in our consideration of whether the district court properly dismissed Edsel.

The Greens claim that Edsel is the alter ego of Gemini and thus should be liable for the actions of the corporation in defrauding them Ain obtaining the execution of their lease agreement@ and Ain misrepresenting material facts concerning the production of the Iselt and Keng wells.@  Their entire claim hinges on Edsel=s status as shareholder and owner of Gemini.[4]  In essence, the Greens urge a theory of Apiercing the corporate veil@ in order to impose liability on Edsel as an individual.  In response, Gemini argues that to prevail on this point the Greens must have evidence of actual fraud and that the Greens lack

---

[3]  The Greens do not cite the Texas Rules of Civil Procedure, local rules or case law to indicate what procedural error the district court may have committed.  They also report in their brief that the district court denied their request when granting the first motion for partial summary judgment.  The record, however, does not reflect a ruling on their motion.

[4]  The Greens do not claim that Edsel was personally involved with their lease.

**10**

such evidence. Because the district court's order does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories Gemini advanced to the district court are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Because this case involves an oil and gas lease, we approach the question of piercing the corporate veil under the standards for contractual claims. *See* Tex. Bus. Corp. Act. Ann. art. 2.21A (West Supp. 2003). As a result, the Greens not only must prove alter ego status, but also must show that Edsel caused Gemini to perpetrate an actual fraud in obtaining the lease for the direct, personal benefit of Edsel. *See Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App.CSan Antonio 1998, no pet.).[5] In this case, the Greens only assert that fraud occurred but offered no evidence in support of their claim. Simple assertions cannot defeat a no-evidence motion for summary judgment. Because we have already found that the Greens=cause of action for fraud against Gemini was properly dismissed, we need not further determine whether there existed evidence of fraud for purposes of the Greens=piercing theory.[6] We conclude that the district court correctly granted summary judgment in favor of Edsel and thus overrule the Greens=first issue.

---

[5] The briefing in this case reflects confusion in this area of the law. While Gemini seems to argue a common-law definition of fraud, the Greens vaguely argue what amounts to a constructive fraud standard. *See Menetti v. Chavers*, 974 S.W.2d 168, 173 (**Tex. App.CSan Antonio 1998, no pet.**). The constructive fraud standard was important in the cases cited by the Greens. However, the legislature amended the statute in 1993 and now requires a showing of actual fraud. **Tex. Bus. Corp. Act Ann. art. 2.21A (West Supp. 2003);** *Menetti*, 974 S.W.2d at 174. Even though the parties formed this lease before 1993, the legislature provided that the amendment applied to obligations entered into before, on or after the effective date of the amendment. *See* Act of May 2, 1993, 73d Leg., R.S., ch. 215, ' 2.26, sec. 2.21A, 1993 Tex. Gen. Laws 418, 459-60.

[6] We note that the district court granted summary judgment for Gemini on the fraud cause of action in 2000, two and a half years after the court granted summary judgment in favor of Edsel. Certainly, the Greens had ample opportunity to discover evidence of fraud in that period of time. Because we decide that

*The Third Partial Summary Judgment*

In their second issue, the Greens contend that the court=s order on the second motion for summary judgment precluded the court from considering Gemini=s third motion for summary judgment. In essence, the Greens claim that the district court erred by hearing a motion for partial summary judgment on issues for which it had previously denied a similar motion. They also argue that, even if the district court was not precluded from considering Gemini=s third motion, the district court erred in dismissing the Greens=claim for breach of implied covenant to reasonably administer the lease.

We must begin by considering whether the district court=s order on the second motion for summary judgment was entitled to collateral-estoppel effect. Collateral estoppel precludes the relitigation of identical issues of fact or law that were actually litigated and essential to a judgment in a prior suit. *Van Dyke v. Boswell, O=Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Therefore, to address this question, we must consider three factors: (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact reviewed on appeal. *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991).

Regardless of the first two factors, here an analysis of the district court=s order under the third factor reveals that its summary judgment in this case was interlocutory. An order of summary judgment is interlocutory if it is not final and appealable. *Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d

---

there was no evidence of fraud in 2000, we will not further discuss the question of whether there was evidence of fraud in 1997 when the district court considered the claim against Edsel.

**12**

311, 312 (Tex. 1994). To be final and appealable, a judgment or order must dispose of all parties and all issues. *Id.* Partial summary judgments are interlocutory and are not presumed to be final and appealable. *Id*. (citing *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1993)). As a result, a trial court has the authority to change or modify a partial summary judgment order until the judgment becomes final. *See Rush v. Barrios*, 56 S.W.3d 88, 98 (Tex. App.CHouston [14th Dist.] 2001, pet. denied). The second partial summary judgment order was clearly interlocutory. Because it granted summary judgment on four issues in the case but denied it for two, it did not dispose of all parties and issues. As a result, it was not final and appealable. We agree with Gemini that the district court had the authority to modify the summary judgment order in this case.

**We now turn to whether either Gemini or the Greens were entitled to summary judgment on the issue of breach of a duty to manage and administer the lease.** When both sides move for summary judgment, as the parties did in this case, and the district court grants one motion but denies the other, the reviewing court should review both sides=summary judgment evidence, determine all questions presented, and render the judgment the district court should have rendered. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

The Greens base their claim of a breach of a duty to manage and administer the lease on two grounds. First, they argue that Gemini had a duty to pool their lease with the leases of surrounding properties.[7] Generally, the duty to pool derives from the duty to protect the leasehold from drainage rather

---

[7] APooling@occurs when a lessee exercises its contractual pooling authority to combine tracts from two or more leases into a single unit around an existing well. *See Southeastern Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 170 (Tex. 1999) (citing *London v. Merriman*, 756 S.W.2d 736, 739 n.1

**13**

than from the duty to manage and administer the lease. *See Southeastern Pipe Line Co. v. Tichacek*, 997

S.W.2d 166, 170 (Tex. 1999); 1 Ernest E. Smith & Jacqueline Lang Weaver, Texas Law of Oil and Gas

'' 5.3, .4 (1998). Although both parties argued extensively as to whether there existed a duty to pool in

this case, neither party specifically cited authority that the duty to pool should be considered derivative of

the duty to manage and administer the lease. Furthermore, because the district court denied both motions

for summary judgment on the drainage claim and allowed it to go to trial, we need not consider the duty to

pool in the context of the duty to manage and administer the lease.[8]

Next, the Greens claim Gemini failed to seek favorable administrative action, though they do

not specify in their pleading what administrative action Gemini should have attempted. At the very least, the

duty to seek administrative relief describes a duty of the lessee to seek regulatory permits and to seek

exceptions to administrative rules regulating oil and gas production. *See Amoco*, 622 S.W.2d at 570. The

standard of care in testing performance of the duty to seek administrative relief is that of a reasonably

prudent operator under similar facts and circumstances, and a lack of probability of success may excuse a

reasonably prudent operator from making these attempts. *Id*. Normally, a jury should determine if a

---

(Tex. App.CCorpus Christi 1988, writ denied). Pooling is a common protective measure employed to satisfy the duty to protect the leasehold from drainage. *Id*. The primary legal consequence of pooling is that production and operation anywhere on the pooled unit are treated as if they have taken place on each tract within the unit. *Id*. (citing *Southland Royalty Co. v. Humble Oil & Ref. Co.*, 249 S.W.2d 914, 916 (Tex. 1952). Thus, there can no longer be drainage of the individual leases by a unit well, only drainage of the unit by wells located outside the unit. *Id*. (citing *Southland*, 249 S.W.2d at 916).

[8] In addition, the lease expressly renunciated an obligation to pool. Therefore, even if a duty to pool could derive in this case from a duty to manage and administer the lease, we would still have to find that no implied duty to pool existed in this lease. *See Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368, 373 (Tex. 2001).

reasonably prudent operator would have sought administrative relief. *Id*. However, in *Amoco*, the plaintiffs specifically pleaded that the defendant drilling company should have applied for spacing exceptions to Railroad Commission drilling regulations. *Id*. at 569. Thus, *Amoco* indicates that an essential element to a claim of breach of a duty to seek administrative relief is a pleading of the type of relief a prudent operator would have considered before putting the question before the jury. *Id*.

Here, the Greens do not specify what administrative relief Gemini could have sought. As Gemini points out, it Adid not breach any duty to the Greens because it never needed an exception to any rules or regulations of the Texas Railroad Commission or any other administrative agency, and the Greens never claimed that Gemini needed an exception.@[9] Thus, the Greens fail to allege an essential element of the duty. Because the Greens offer no other grounds for a cause of action under the duty to manage and administer the lease, we overrule their second issue.

### *The Greens=Expert Witnesses*

The Greens argue in their fifth issue that the district court improperly limited the testimony of their expert, Smith. The Greens assert that the district court should have allowed Smith to testify as to a requirement to pool, a requirement to provide compensatory royalties, and a requirement to release the lease. The admission or exclusion of evidence is committed to the trial court=s sound discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). This determination will not be

---

[9] In fact, Smith, the Greens= own expert, stated that Railroad Commission field rules allowed flexibility in the creation of units. Gemini, according to Smith, did not need to seek any administrative relief to include the Greens= lease in either the Keng or Iselt units, the remedy the Greens would have been seeking.

**15**

overturned absent a clear abuse of discretion. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000); *Alvarado*, 897 S.W.2d at 753; *Waldrep v. Texas Employers Ins. Ass=n*, 21 S.W.3d 692, 703 (Tex. App.CAustin 2000, pet. denied). **A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles**. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d **223, 226 (Tex. 1991)**; *Waldrep***, 21 S.W.3d at 703.**

**When the Greens offered Smith as an expert, the court determined that he was certified as an expert only for his knowledge in the field of petroleum engineering, not for knowledge of the law or Railroad Commission regulations. The court then examined him to determine the content of his testimony in each of these areas and heard arguments from both parties. In examining the case law, the court decided that** a requirement to pool, a requirement to provide compensatory royalties, and a requirement to release the lease **were legal not factual questions.**[10] **The district court primarily relied on** *Amoco* **to conclude that only two factual issues existed for a petroleum engineer expert witness: (1) whether substantial drainage occurred and, (2) if so, whether a reasonably prudent operator could have drilled an offset well with a**

---

[10] First, the district court determined that Texas law does not provide for compensatory royalties, as a duty to provide compensatory duties would stand opposite to the reasonably prudent operator standard. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 572 (Tex. 1983). Second, the district court considered the question of pooling and heard from Smith that he would only testify about amending the existing units to include the Greens= lease in another unit. The court concluded that testimony about pooling would concern only legal questions. *Id*. Finally, the court concluded that releasing the lease was a legal matter concerning the lease itself and not a factual question within Smith=s realm of expertise as a petroleum engineer.

**reasonable expectation of profit. 622 S.W.2d at 568. Therefore, it excluded Smith=s testimony as to other matters. We find the district court=s reading of *Amoco* to be reasonable. In reviewing the record, then, we find that the district court did not act in an unreasonable or arbitrary manner, and we thus overrule the Greens= fifth issue.**

The Greens argue in their sixth issue that the district court erred when it excluded the testimony of Williams concerning drainage because it improperly characterized Williams, an oil and gas operator, as a lay witness rather than an expert witness. A court can properly restrict the testimony of a witness to factual matters if the witness is not designated as an expert during discovery. Tex. R. Civ. P. 194.2; *Vingcard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.CFort Worth 2001, pet. denied). Here, the Greens sought to have Williams testify that he had considered leasing the Greens= property after the expiration of Gemini=s lease but ultimately did not lease the property because of determinations he had made concerning possible drainage of the property. The district court limited his testimony to his decision not to lease the property and excluded his opinion testimony as to possible drainage because the Greens had not offered him as an expert witness during discovery. We hold that the court=s ruling concerning Williams was within its discretion, and therefore overrule the Greens= sixth issue.[11]

*Gemini=s Expert Witnesses*

---

[11] The Greens raise in their sixth issue two additional points. First, they argue that the district court erred in permitting Gemini=s experts to testify about certain documents not produced during discovery. Because they raise this complaint again in their seventh issue, we will not address it here. Second, they state that the district court erred in Alimiting the testimony of James Edsel,@ the brother of Robert Edsel and a former Gemini employee. Because the Greens do not further discuss this point in their brief, it is waived and we will not consider it.

In their seventh issue, the Greens argue that the district court improperly failed to disqualify the three expert witnesses offered by Gemini: Edsel, Carver, and Wagner. In the alternative, they argue that the district court should have limited the experts= testimony, should have limited the documents upon which the experts could rely, or should have permitted the Greens to conduct a voir dire of the experts under rule 705(b) of the Texas Rules of Evidence.

First, the Greens argue that the district court should have disqualified Gemini=s experts because their professional relationships with Gemini misled the jury.[12] *See* Tex. R. Evid. 403. We disagree. The court heard testimony regarding the qualifications of each of the experts outside of the presence of the jury. Edsel testified from his experience as a drilling operator in the Giddings (Austin Chalk 3) Field. Wagner is a petroleum geologist who worked professionally examining wells on site, also in the Giddings (Austin Chalk 3) Field. Carver is a petroleum engineer with experience in drilling horizontal wells. Each of these witnesses testified about his former or current relationship with Gemini. Each testified within his areas of expertise. The Greens had full opportunity to cross-examine each of the witnesses in front of the jury and to elicit testimony concerning their relationships with Gemini. We hold that the district court did not abuse its discretion by allowing Gemini=s expert witnesses to testify.

Next, the Greens claim that the district court should have limited the testimony of each of the witnesses. However, the Greens do not cite to passages of testimony that were improper or argue why

---

[12] Edsel is the president and owner of Gemini. Carver and Wagner are both former employees of Gemini.

those sections of testimony may have been improper. We consider this argument inadequately briefed and thus waived. *See* Tex. R. App. P. 38.1(h).

Third, the Greens argue that the district court should have limited the documents upon which the experts relied. In support of this argument, the Greens refer to the use of a report of reserve estimates and drainage calculations for the Keng and Iselt wells prepared and used by Carver. **The Greens established on the record that Carver had not submitted the report to them prior to his appearance in court, but the Greens did not object to him referencing the report during his testimony. To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling. Tex. R. App. P. 33.1(a)(1)(A);** *Holland v. Wal-Mart Stores, Inc.***, 1 S.W.3d 91, 94 (Tex. 1999). Therefore, we find that the Greens did not preserve this complaint.**

**Lastly, the Greens argue that the court improperly denied them the opportunity to conduct a voir dire of Gemini≠s expert witnesses.** *See* **Tex. R. Evid. 705(b).[13] For us to reverse**

---

[13] We note here that the language of the rule is permissive and not mandatory in a civil context. The rule provides:

> **Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request . . . in a civil case** *may* **. . . be permitted to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based.**

Tex. R. Evid. 705(b) (emphasis added). The case law is unclear as to standards of review for rule 705(b) rulings in a civil context, and none of the cases cited by either party in their briefs addresses this rule. Because we ultimately find that the Greens do not show in what way the court≠s denial of their request affected their case, we do not reach this problem.

**the trial court on this point, we must find an error that probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1). The Greens do not argue in their briefs which statements they would have sought to exclude from the jury had they had the opportunity to conduct a voir dire. They also do not argue how any error we may find here affected the judgment in their case. As a result, we have no basis upon which to review the district court=s decision. We overrule the Greens= seventh issue.**

*Jury Charge*

In their eighth issue, the Greens attack the first question submitted to the jury in the charge of the court. The question appeared as follows:

> Question No. 1
>
> After October 30, 1992, did Gemini breach its duty to protect the Greens=lease from drainage?
>
> Gemini breached its duty to protect the Greens=lease from drainage only if (1) the drainage from the Greens= lease was substantial and (2) a reasonably prudent operator would have acted to prevent the drainage.
>
> A reasonably prudent operator would have acted to prevent the drainage only if the value of the oil and gas reasonably expected to be recovered by drilling a well on the Greens= property would have equaled the reasonably expected costs of drilling and producing and marketing the oil and gas plus a reasonably expected profit to the operator.

First, the Greens argue that the form of the question was improper because it posed a question of law by asking the jury to determine if there was a breach of the duty to protect from drainage. The Greens cite *Emmord=s, Inc. v. Obermiller* for the proposition that the use of the word Abreach@ in a jury charge

20

necessarily renders the charge improper for asking a question of law. 526 S.W.2d 562, 566 (Tex. Civ. App.CCorpus Christi 1975, writ ref=d n.r.e.). In response, Gemini argues that under the broad-form submission preference of Texas courts, the charge correctly outlined a question of fact for the jury.

A trial court has discretion to submit issues broadly to the jury. Tex. R. Civ. P. 277. In addition, the Texas Supreme Court urges trial courts to take advantage of this discretion and to submit the controlling issues in a case in broad form so as to simplify a jury=s chore. *See Harris County v. Smith*, 96 S.W.3d 230, 235-37 (Tex. 2002) (reaffirming supreme court=s Afundamental commitment@ to broad-form submission); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass=n*, 710 S.W.2d 551, 555 (Tex. 1986). The trial court may give such information and definitions which are proper. Tex. R. Civ. P. 273. The trial court may also use legal terms in broad form submissions to identify the single issue that the jury needs to determine. *See Keech v. Kroger Corp.*, 845 S.W.2d 262, 266 (Tex. 1992) (approving submission of general negligence question to jury when accompanied by appropriate instructions); *Cabot Corp. v. Brown*, 754 S.W.2d 104, 108 (Tex. 1987) (approving submission of broad legal issue that includes combination of elements when broad issue is controlling question).

Here, the single factual issue that existed was whether there was a breach of a duty, not a legal question of the existence of a duty. The district court carefully submitted with this factual issue the elements that the jury would need to examine to make that determination: the two factual elements which would determine the answer to that question and a definition of Areasonably prudent operator.@ Our examination of the charge leads us to conclude that the district court constructed a question which outlined the relevant factual issues in broad form and offered relevant definitions to aid the jury in its determination.

**21**

We refuse to find that the word Abreach,@ taken out of the context of the charge as a whole, would defeat the validity of the charge. *See Keech*, 845 S.W.2d at 266; *Cabot Corp.*, 754 S.W.2d at 108. As a result, we agree with Gemini that the question was appropriate in form.

Next, the Greens argue that the jury question was flawed in its definition of Areasonably prudent operator.@ The Greens assert that the district court erred in two ways: in failing to include pooling as an alternate means of measuring the duty and in including the element of profit as an element for the plaintiffs to prove. We disagree. An action on a lessee=s duty to protect the leasehold from drainage requires proof (1) of substantial drainage of the lessor=s land and (2) that a reasonably prudent operator would have acted to prevent that substantial drainage. *Amoco*, 622 S.W.2d at 568. No duty exists unless the value of oil or gas that can be recovered equals the cost of administrative expenses, drilling or re-working and equipping a protection well, producing and marketing the oil or gas, and yields a reasonable expectation of profit to the lessee. *Id*. Then, if a duty does exist, a lessee may employ various methods to satisfy its duty to protect the leasehold from drainage, depending on the circumstances. *Id.* One of these methods may be to exercise its contractual pooling authority and combine tracts from two or more leases into a single unit around an existing well. *Tichacek*, 997 S.W.2d at 170. However, if no duty exists, there can be no breach and therefore no duty to pool can arise. The cost of drilling a well stands as one factor among many that a reasonably prudent operator would consider when confronted with the financial question of what to do with a particular lease. The question of pooling arises only after a fact-finder has considered the cost factor and determined that a duty exists. A failure to pool is not itself a factor in determining the existence of a duty to protect the leasehold from drainage.

**22**

The jury charge in this case mirrors the language of *Amoco*. 622 S.W.2d at 568. It establishes that the cost of drilling a well is an important factor in determining a violation of the reasonably prudent operator standard. *Id*. Thus, it accurately reflects the legal standards of the duty to protect the lease from drainage. As a result, it would be inappropriate for the jury to consider pooling before or in conjunction with the question of whether there has been a breach of the duty to protect the leasehold from drainage. Because the jury found that no duty was breached, the question of a duty to pool need not arise.

Finally, the Greens argue two further flaws in the jury charge: (1) that it failed to state the question of whether substantial drainage occurred, and (2) that it incorporated by reference an inferential rebuttal issue in violation of rule 277 of the Texas Rules of Civil Procedure. To preserve error, parties must make all objections to the jury charge before the charge is read to the jury; all objections not so presented are waived. *See* Tex. R. Civ. P. 272; Tex. R. App. P. 33.1(a). An objecting party must point out distinctly the objectionable matter and the grounds of the objection. *See* Tex. R. Civ. P. 274. For an objection to be valid, the party must make the court aware of the complaint, timely and plainly, and obtain a ruling. *See State Dep≠ of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). At trial, the Greens did not object to the jury charge on either of these grounds. Thus, they have not preserved their objection to the jury charge on the basis of substantial drainage or the presence of an inferential rebuttal issue and we do not consider either of these arguments. We overrule their eighth issue.

In their ninth issue, the Greens argue that the district court erred in failing to submit their proposed charge to the jury. However, the Greens cite no legal authorities as a basis for their complaint.

They offer no legal analysis of the points. Under these circumstances, we conclude that they have failed to adequately brief these errors. Tex. R. App. P. 38.1(h). Thus, we overrule their ninth issue.

*Outside Influence*

In their tenth issue, the Greens argue that jury misconduct arose because of outside influences on the jury. Gemini responds that the evidence of outside influence only includes a comment one of the jurors made after the jury had agreed on a verdict and so does not amount to evidence of outside influence. We agree with Gemini.

If a party shows that misconduct by the jury occurred, that the misconduct was material and that, based on the whole record, it probably resulted in harm, that party can obtain a new trial. Tex. R. Civ. P. 327(a); *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). The rule allows jurors to testify about outside influences on their deliberations. Tex. R. Civ. P. 327(b). An Aoutside influence@ emanates from sources other than the jurors themselves and so does not include opinions or experiences that individual jurors may offer while participating in deliberations. *Golden Eagle Archery*, 24 S.W.3d at 370. ADeliberations@ means the formal jury deliberationsCthe stage in trial after the court has charged the jury but before it has returned a verdict. Tex. R. Civ. P. 287, 327; *Golden Eagle Archery*, 24 S.W.3d at 371.

The Greens offer evidence of jury misconduct in the form of question-and-answer affidavits submitted by three of the jurors. Specifically, they point to the answers to one question that they posed to jury members after trial:

After the vote was taken did you hear another juror say that he had his land leased and all your rights had to be expressly written in the lease?

Two jurors answered in the affirmative.[14] The Greens argue that the juror=s comment amounted to jury misconduct.[15] Whatever statement was made or opinion offered during the jury deliberations, the evidence reflects that it came from one of the jurors. As a result, it cannot be described as an Aoutside influence.@ *Golden Eagle Archery*, 24 S.W.3d at 370. Because the Greens present no other evidence of jury misconduct, we overrule their tenth issue.

## CONCLUSION

For the reasons set forth above, we overrule the Greens= issues on appeal. We affirm the judgments of the district court.

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

---

[14] The record contains the affidavits of three jurors. One juror answered Ayes@ and added that another juror Asaid he had one year options in his leases so that if a company had not drilled in a year he could always get out of the lease.@ Another juror answered Ayes.@ The third answered Ano.@

[15] The Greens intend to argue either that one juror had opinions that influenced the deliberations and the source of those opinions was revealed after deliberations or that the statement itself was made during deliberations. Because both possibilities result in an analysis of an alleged influence during deliberations, the rule 327(b) approach applies.

25

Affirmed

Filed:   May 1, 2003